### Hollinger Estate

*Carl A. Wiker*, for appellants.

*Mark R. Eaby, Jr.*, for Commonwealth.

BOWMAN, P. J., January 17, 1963.— John Hollinger died January 7, 1962. On March 29, 1962, the Commonwealth filed an inheritance tax appraisement in which the gross taxable estate was valued at $323,-595.96. In controversy, in this appeal from the appraisement taken by John H. Hollinger and Marian H. Hess, children of decedent, in their capacity as executors of his will, and Marian H. Hess, individually, are 112 bonds valued at $91,740. These bonds are referred to in the appraisement as those "of Marian H. Hess marked 'Marian' and found in safe deposit box of John Hollinger to which Marian H. Hess had power of attorney." They are not included in the inventory as assets of decedent's estate. Also made the subject of appeal are two transfers made by decedent on January 10, 1961, one to his son John, and the other to his daughter Marian, each in the amount of $3,000.

In their petition for a citation sur appeal, appellants aver that the bonds were the individual property of testator's daughter, Marian, and that the transfers of $6,000 followed a pattern of giving over a period of years and were made to take advantage "of the annual exclusion under the Federal Gift Tax Law." No answer was filed by or on behalf of the Commonwealth. Thus, what its position is with respect to the bonds is not set forth. Obviously, it must be that the bonds belonged solely to decedent. As to the transfers, it is clear from the appraisement that they were made a part of the gross taxable estate under the provisions of sections 201, 221 and 222 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373. Section 221 of that act (72 PS §2485-221) provides:

"(a) Consideration. All transfers of property, specified in sections 222-226, which are made during his lifetime by a resident or a nonresident, to the extent that they are made without valuable and adequate consideration in money or money's worth at the time of transfer, are subject to tax under this act."

And section 222 (72 PS §2485-222) of that act reads as follows:

"A transfer conforming to section 221 (a), and made in contemplation of the death of the transferor, is subject to tax under this act. A transfer shall not be deemed or held to have been made in contemplation of death if made more than two (2) years prior to the death of the transferor, but, unless shown to the contrary, shall be deemed to have been in contemplation of death if it is of a material part of the transferor's estate and is made within two (2) years prior to the death of the transferor.

"A transfer is made in contemplation of death when the dominant or impelling motive, but not necessarily the sole motive of the transferor, was prompted by the thought of death, without which motive the transfer

would not have been made. The term is not restricted to that expectancy of imminent death which actuates the mind of a person making a gift causa mortis."

A hearing was had at which the competency of Marian Hess as a witness was questioned by the Commonwealth. Over the latter's objection, we permitted her to testify and reserved a ruling as to her competency. Apparently the Commonwealth, no brief having been submitted in its behalf at argument, is taking the position that Mrs. Hess was incompetent to testify under the Act of May 23, 1887, P. L. 158, sec. 5 (e), 28 PS §322.

In Lartz Estate, 11 Fiduc. Rep. 113 (1959), in a hearing to determine the deduction for inheritance tax of notes from decedent to a son, it was held that the claimant son was barred by the Act of 1887 from testifying over the objection of the Commonwealth, although the claim was not opposed by the estate.

In Conoly's Estate, 7 Fiduc. Rep. 162, it was held that decedent's only heirs, a brother and a sister, who was the administratrix, were incompetent as witnesses to prove their claims against the estate, the effect of which was to diminish the claim of the Commonwealth for inheritance tax. In Devlin Estate, 35 Del. Co. 441 (1947), a similar conclusion was reached. These cases, as noted, involved claims sought to be established as deductions against inheritance tax.

In Esbenshade's Estate, 6 D. & C. 520, 39 Lanc. 339, the competency challenged was that of a transferee of stock from decedent. The transfer was completed before the death. The estate asserted no rights to the stock. In holding the transferee competent, the court stated, at page 521: "Because her testimony reflects title to the securities, the Commonwealth concluded that the issue trying is as to title. . . . But that is not the issue. . . . The issue before this court is as to the amount of the estate on which tax is collectible; and we know of no

rule nor reason justifying an arbitrary grafting of another issue onto it. . . ."

In McGary Estate, 355 Pa. 232, an appeal from a supplemental inheritance tax appraisal was taken by the executor of decedent's will and as agent for all parties in interest. Involved were items of currency, bonds and jewelry, found in decedent's safe deposit box, almost all in envelopes or packages bearing particular notations that the items were the property of named persons. None of the items in controversy was inventoried by the executor as assets of the estate. It was held that claimants were not incompetent to testify under the Act of 1887. In this connection, it is stated, at page 236:

"But it seems clear that the Act has no application. The parties to this proceeding are the Commonwealth of Pennsylvania and the estate. The witnesses were not claimants against the estate, nor was there testimony adverse to the rights of the decedent. And so it was held in Esbenshade's Estate, 73 P. L. J. 779 (1925), and in Watson's Estate, 23 D. & C. 669, at 677 (1935), which were appeals from the assessment of inheritance taxes."

We have carefully considered the question of competency and we are of the opinion, and so hold, that Marian H. Hess is not an incompetent witness.

From the record and the testimony, we find that since March 18, 1924, decedent was the lessee of safe deposit box no. 364 at the Conestoga National Bank of Lancaster; that on August 9, 1949, decedent appointed his daughter, Marian, his "deputy and agent to have access" to the box; that all the bonds here in controversy were in that box at the time of decedent's death; that each of the bonds is a bearer bond and on each was written in pencil, at the top, the name "Marian"; that in addition to these bonds there were in the box, at decedent's death, in a separate package, stocks of the

value of $208,192 issued in the name of decedent and bearer bonds of the value of $11,010, all of which were appraised as part of decedent's gross taxable estate; that, in addition to all these securities, there were in the box 123 certificates of stock of various corporations and in varying numbers of shares registered in the name of Marian H. Hess, and 128 bonds, face value $124,500, registered in her name, none of which securities the Commonwealth appraised as assets of decedent's estate; that prior to 1952, Mrs. Hess had her own safe deposit box at the Conestoga National Bank of Lancaster; that in that year, she surrendered that box and her son became the lessee thereof; that after 1952, Mrs. Hess used her father's safe deposit box as a depository for her securities; that, in the case of 105 of the disputed bonds, invoices for the purchase thereof were issued by the broker or brokers in the name of Marian H. Hess as purchaser *; that payment for the 105 bonds was made by Mrs. Hess by checks drawn on her own checking account; that decedent and his daughter at all times lived together either in decedent's home or in the daughter's home; that as the bonds in question were delivered from time to time to their home by mail, it was the practice of decedent to write his daughter's name on them; that all the income from the bonds in question was included in the income tax returns of Mrs. Hess.

John H. Hollinger, decedent's son, whose competency as a witness is not challenged, testified that he is a security salesman; that the 105 bonds for which invoices were produced by his sister, Marian H. Hess, were purchased by her, through him, and were paid for out of her personal funds; and that none of the bonds in controversy was the individual property of decedent. We have no reason to disbelieve his testimony.

---

* This fact was conceded by counsel for the Commonwealth at the hearing. The invoices were produced at the hearing.

If the bonds were a part of the assets of decedent's estate, this witness would be entitled under the provisions of the will to a one-half interest therein.

We have carefully considered all the evidence before us and we find that the 112 bonds in controversy do not form a part of decedent's gross taxable estate.

With respect to the two transfers, it appears from the testimony that they involve cash. They were made on January 10, 1961. Decedent died January 7, 1962. It is not contended that the transfers were made for valuable and adequate consideration. Thus, under the Act of 1961, a presumption arises that they were made in contemplation of death if they were "of a material part of the transferor's estate."

What constitutes a material part of the transferor's estate under the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, is discussed in Miller Estate, 404 Pa. 156. It is there stated (p. 157) :

"While the proportion the gift bears to the total estate is a factor to be considered in determining whether a gift represents a 'material part of the estate' it is not the sole factor. The size of the gift, the nature of the gift (e.g., cash, securities, type of interest) and the nature of the remainder of the estate (e.g., liquid, title) must be considered in addition to the proportion."

Exclusive of the 112 bonds appraised at $91,740, decedent's gross taxable estate as appraised is $231,-855.96. The $6,000 transfers are less than three percent of that amount. However, the amount transferred was almost equal to the cash which forms a part of the estate. In this respect it is no immaterial part of the taxable assets.

Decedent was 94 years of age when he died. Although there is testimony that his health was "good" on January 10, 1961, there is also testimony that he became ill on March 9, 1961, that he entered a hospital in June

of that year, where he remained for approximately a month, and thereafter was an invalid. Appellant submitted no medical testimony with respect to decedent's health and, in the absence thereof, we will not conclude that the presumption has been overcome.

And now, January 17, 1963, with respect to the 112 bonds which are identified in the resident inheritance tax appraisement filed by the Commonwealth as "bonds of Marian H. Hess marked 'Marian' and found in safe deposit box of John Hollinger," valued in the aggregate at $91,740, the appeal is sustained, and with respect to the transfers set forth in schedule "C" of said appraisement, in the amount of $6,000, the appeal is dismissed. The gross taxable estate is hereby reduced to, and fixed at, $231,855.96.